STATE OF CONNECTICUT *v.* ANONYMOUS (1974–1)*

APPELLATE DIVISION OF THE COURT OF COMMON PLEAS

HAMILL, J. The record reveals that prior to June 27, 1973, the defendant, while receiving public assistance, had been arrested and had pleaded not guilty to two counts charging fraud in obtaining state aid; that on June 27, 1973, the defendant was arrested under a warrant charging him with larceny in the first degree (General Statutes § 53a-122); that at a session of the Circuit Court held on that date the defendant was permitted to withdraw his prior pleas of not guilty; and that he immediately entered guilty pleas to the two counts of fraud in obtaining state aid. He was then presented in the instant case and entered a plea of guilty to a substitute information charging him with the crime of larceny in the second degree, in violation of § 53a-123 of the General Statutes.

---

* Thus entitled, in view of General Statutes § 54-90.

Before accepting such guilty pleas, the court asked the defendant, who was represented by counsel, if he understood the charges and consequences. The defendant replied that he believed so. The court then asked the defendant if he understood that he was pleading to a class D felony and it "could very well mean five years in prison," to which question the defendant replied that he understood. The court then informed the defendant of his constitutional privilege against compulsory self-incrimination, of his right to remain silent, of his right to plead not guilty and to have a jury trial, of his right to be confronted by his accusers, and that he was presumed innocent until the state by competent evidence established guilt beyond a reasonable doubt. The defendant assured the court that his pleas were voluntary and not the result of force, threat or promise. The defendant's attorney informed the court that while there had been pre-trial bargaining, no agreements had been made.

At this point, the transcript reveals that the following occurred: "The court: Fine. What exactly did you do on this larceny . . . ? The accused: It had something to do with food stamps, Your Honor. The court: Yes. The accused: Well, I was on welfare. We were receiving food stamps, so they tell me it was fraud or larceny. Assistant prosecutor: Both files are interrelated. The court: I know, but I wanted . . . [the accused] to tell me his version. I have to be satisfied in my mind that it's voluntarily done and that he understands the nature of the plea. What did you do? The accused: Well, I was on welfare and receiving food stamps and I done some work while I was receiving welfare. The court: I see. But you were receiving food stamps? The accused: Yes. The court: Which have a value and which therefore became a larceny. Then in my mind he is making his guilty plea voluntarily. I am

sure that he understands his rights and I will accept the plea and I will order a presentence investigation to be performed by what date?"

Section 53a-123 of the General Statutes provided: "(a) A person is guilty of larceny in the second degree when: (1) The property consists of a motor vehicle, or (2) the value of the property or service exceeds five hundred dollars."

Upon the plea of guilty, the court should have been informed of the specific charge against the defendant and of the claimed acts of the defendant. The court should have been informed that the defendant was charged with obtaining the food stamps by false pretenses; that a person on welfare, in order to obtain food stamps, must certify that he was eligible for the food coupons and that his family's financial status had been correctly reported; and that the state claimed that the defendant had so certified and on a sufficient number of occasions so as to exceed the $500. Such information would have enabled the court to elicit from the defendant's own lips a specific and particular account of the commission of the acts and the possession of the requisite intention to permit a determination of guilt.

In the presentence report, the following appears: ". . . [The accused] received Aid to Families with Dependent Children for the full support of himself, his wife and 7 minor children during the periods of . . . . He and his wife . . . received food stamp coupons from . . . until . . . , with a net bonus value of $2,529.00. They paid $2,407.00 for coupons valued at $4,936.00. These food stamp coupons were issued twice monthly and bore the following certification: 'I certify that I am eligible for the food coupons shown; that my present family size and financial status have been correctly reported to the

State Welfare Department; and that the food coupons will be used only to buy food included in the program.'" The report also stated that the defendant and his wife "obtained $2,529.00 in food stamp value under false pretenses."

The transcript reveals that at the time of sentencing, the defendant being represented by counsel, the assistant prosecutor stated that he had nothing to add to what was contained in the presentence report. On behalf of the defendant, as to the count involving food stamps, defense counsel stated that the defendant "has made a complete admission that he did obtain these food stamps. And the question is, Was he entitled to them and was he guilty of fraud? I will say to Your Honor immediately, this man has no defense and he is guilty. But the question is what is he guilty of?"

Following the statements by defense counsel and the assistant prosecutor, and without further questions of or statements from the defendant, the court imposed suspended jail sentences on the two counts of welfare fraud in the related case, and in the instant case sentenced the defendant to not less than two and no more than four years.

The record reveals that an appeal was filed and that new counsel entered his appearance and filed a further appeal and has ever since continued to represent the defendant.

The amended assignment of errors alleges that the court erred in concluding that the defendant was guilty, in finding the defendant guilty in the absence of a factual basis, in finding the defendant guilty when the record discloses that the defendant was not guilty, and in finding the defendant guilty upon a substituted information containing no jurat. This last claim is without merit.

There can be no doubt that the procedures surrounding pleas of guilty in state courts must meet the standards of due process required by the constitution of the United States. *United States ex rel. Thurmond* v. *Mancusi,* 275 F. Sup. 508, 514. An intelligent and full understanding by the accused of the charge against him is a first requirement of due process. *Leonard* v. *United States,* 231 F.2d 588, 591. "A plea of guilty differs in purpose and effect from a mere admission . . . ; it is itself a conviction. Like a verdict of a jury it is conclusive. . . . Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." *Kercheval* v. *United States,* 274 U.S. 220, 223; *United States ex rel. Thurmond* v. *Mancusi,* supra, 514. "A mere routine inquiry — the asking of several standard questions — will not suffice to discharge the duty of the trial court." *United States* v. *Lester,* 247 F.2d 496, 499; *United States ex rel. Thurmond* v. *Mancusi,* supra, 519. The fact that the defendant was represented by counsel did "not relieve the court of the responsibility of further inquiry." *United States* v. *Lester,* supra, 500.

"Fair procedures for accepting pleas of guilt must be designed to at least give reasonable assurance that (1) there is a substantial factual basis for a finding of guilt, and (2) the defendant pleads 'voluntarily' . . . ." *United States ex rel. Thurmond* v. *Mancusi,* supra, 514.

It is not our function here to determine the defendant's guilt, but we do note that the appendix to the defendant's brief contains the report of the investigation of the defendant by the enforcement officer, special investigation unit, department of finance and control, to which is attached a three-

page memorandum prepared by the food stamp clerk. This report to the prosecutor led to the warrant in the instant case. The report and its attachment show that the family member who obtained the food stamps was . . . the defendant's wife; that the defendant's signature appears on one coupon only, in the sum of $104, for which $54 was paid.

The defendant was not charged with having committed the crime by his wife as his agent; he alone was charged with the offense. The court received no information from either the assistant prosecutor or defense counsel as to the manner or extent of the defendant's involvement in the offense charged. A plea bargaining agreement was expressly denied. The court attempted on two occasions before accepting the guilty plea to ascertain the defendant's involvement but elicited from the defendant only that the offense "had something to do with food stamps" and "I was on welfare and receiving food stamps." Accordingly, the court at no time, either at the plea or at the sentencing, or even from the presentence report, learned or was informed of the true nature of the defendant's individual and specific involvement or the extent thereof.

It is concluded here that the trial court had insufficient factual basis for accepting the guilty plea and that the proceedings surrounding the defendant's plea were lacking in fundamental fairness and amounted to a denial of due process.

There is error, the judgment is set aside and the case is remanded with direction to grant the defendant permission to withdraw his plea of guilty to larceny in the second degree, and then to be proceeded with according to law.

In this opinion MISSAL and COLLINS, Js., concurred.